# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE ANDY WARHOL FOUNDATION FOR THE
VISUAL ARTS, INC.,

                Plaintiff,

      vs.

LYNN GOLDSMITH AND LYNN GOLDSMITH,
LTD.

                Defendants.

Case No.  17-cv-02532-JGK

**AMENDED ANSWER OF
DEFENDANTS, AMENDED
COUNTERCLAIM OF LYNN
GOLDSMITH FOR COPYRIGHT
INFRINGEMENT AND JURY
DEMAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LYNN GOLDSMITH,

                Counterclaim Plaintiff,

      vs.

THE ANDY WARHOL FOUNDATION FOR THE
VISUAL ARTS, INC.,

                Counterclaim Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendants Lynn Goldsmith ("Goldsmith") and Lynn Goldsmith, Ltd. ("LGLtd"), for

their Answer to the Complaint of plaintiff The Andy Warhol Foundation For The Visual Arts,

Inc. (the "Foundation"), and Counterclaim Plaintiff Goldsmith, for her counterclaim against the

Foundation for copyright infringement, allege as follows:

<u>**ANSWER TO COMPLAINT**</u>

1.     With respect to the allegations set forth in paragraph 1 of the Complaint,

Defendants admit this is a civil action but otherwise deny knowledge or information sufficient to

form a belief as to the truth or falsity of the remaining allegations alleged therein.

2.      Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 2 of the Complaint, except admit that Andy Warhol ("Warhol") was a leading figure in the Pop Art movement of the 1950s and 1960s, and expressly deny that the Warhol work that is the subject of this action is of a "transformative nature" under Section 107 of the 1976 Copyright Act.

3.      Deny the allegations set forth in paragraph 3 of the Complaint that "the *Prince* Series drew inspiration from and transformed a publicity photograph of Prince in circulation at the time" and otherwise deny knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 3 of the Complaint.

4.      Admit the allegation set forth in paragraph 4 of the Complaint, but aver that the image appearing in Vanity Fair was an illustration by Warhol (the "Infringing Image"), which was created under license granted to Vanity Fair by Goldsmith and was derivative of Goldsmith's iconic photographic portrait of Prince (the "Goldsmith Photo"), as further pleaded in the within Counterclaim.

5.      Deny the allegations set forth in paragraph 5 of the Complaint, except admit that Goldsmith is alleging in the within Counterclaim that the Foundation has infringed her copyright in the Goldsmith Photo and that the Infringing Image is not transformative and is not entitled to a fair use defense.

6.      Deny the allegations set forth in paragraph 6 of the Complaint.

7.      State that the allegations set forth in paragraph 7 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, deny the allegations therein.

8.      Deny knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations set forth in paragraph 8 of the Complaint.

9.      Admit the allegations set forth in paragraph 9 of the Complaint.

10.     Admit the allegations set forth in paragraph 10 of the Complaint.

11.     State that the allegations set forth in paragraph 11 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, admit that this Court has subject matter jurisdiction over this action.

12.     State that the allegations set forth in paragraph 12 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, admit that this Court has personal jurisdiction over LGLtd.

13.     State that the allegations set forth in paragraph 13 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, admit that this Court has personal jurisdiction over Goldsmith in her capacity as an officer of LGLtd.

14.     State that the allegations set forth in paragraph 14 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, admit that venue is proper in this District.

15.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 15 of the Complaint.

16.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 16 of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 17 of the Complaint, and aver that the referenced third party comments are irrelevant to the issues and claims in this case.

18.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 18 of the Complaint, and aver that the referenced third party comments are irrelevant to the issues and claims in this case.

19.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 19 of the Complaint, and aver that the referenced third party comments are irrelevant to the issues and claims in this case.

20.     Deny the general allegation that "Warhol's works were entirely new creations," deny knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 20 of the Complaint and respectfully refer the Court to the complete decision in *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013), and aver that the subject Infringing Image does not "comment[] on consumer culture and explore[] the relationship between celebrity culture and advertising."

21.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 21 of the Complaint, and aver that the subject Infringing Image was derived from the Goldsmith Photo that was licensed by Lynn Goldsmith Inc. ("LGI"; later renamed Lynn Goldsmith, Ltd.) to Vanity Fair in 1984 for one time use as the basis for an illustration, with required attribution credit to Goldsmith, as further alleged in the Counterclaim herein, and that each of the images portrayed in paragraph 21 were derived from the same Goldsmith Photo.

22.     Deny the allegations set forth in paragraph 22 of the Complaint and aver that the image depicted therein is not the Goldsmith Photo, which was used to create the Infringing Image under license from LGI to Vanity Fair, as further set forth in the Counterclaim herein.

23.     Admit the allegations set forth in paragraph 23 of the Complaint, except aver that

Goldsmith individually owns the copyright in the image depicted in paragraph 23, which did not form the basis for the Infringing Image.

24.     Deny the allegations set forth in paragraph 24 of the Complaint.

25.     Deny the allegations set forth in paragraph 25 of the Complaint and respectfully refer the Court to the Infringing Image in issue, the images in paragraph 25 of the Complaint and the Goldsmith Photo from which they were all derived for a  comparison and "how the work in question appears to the reasonable observer," *Cariou v. Prince*, 714 F. 3d 694, 707 (2d Cir. 2013), and further aver that none of the modifications made by Warhol to the Goldsmith Photograph altered the fundamental characteristics and essence of the Goldsmith Photo.

26.     Deny the allegations set forth in paragraph 26 of the Complaint.

27.     Deny the allegations set forth in paragraph 27 of the Complaint.

28.     Admit the allegation set forth in paragraph 28 of the Complaint.

29.     Deny the allegations set forth in paragraph 29 of the Complaint, except admit the allegation that the referenced "Prince Series" resembles the Goldsmith Photo because they are derivative works thereof.

30.     Admit the allegation set forth in paragraph 30 of the Complaint and aver that as Goldsmith is a photographer, not a painter, the relevant market is for photography reproduction and usage rights, and fine art photography print sales.

31.     Deny the allegations set forth in paragraph 31 of the Complaint insofar as they imply that defendants never licensed others to paint, screen print, or draw works of art based on the Goldsmith Photo.

32.     Deny the allegations set forth in paragraph 32 of the Complaint and aver that the Infringing Image was licensed to Condé Nast by Defendant Foundation in 2016, through the

Foundation's agent, Artist Right Society, for the identical purpose for which the Goldsmith Photo was originally licensed to Vanity Fair in 1984, and may have been licensed by the Foundation to other third parties at different times within the three year period preceding the filing of this action.

33.      Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 33 of the Complaint.

34.      Deny the allegations set forth in paragraph 34 of the Complaint.

35.      Deny the allegations set forth in paragraph 35 of the Complaint, and aver that the Infringing Image has been commercially licensed and remains available for commercial license to publishers and other third parties.

36.      Deny the allegations set forth in paragraph 36 of the Complaint, and aver that the "Prince Publicity Photograph" as defined in the Complaint is not the Goldsmith Photo in issue and that collectors of pop art have also acquired Goldsmith's limited edition fine art prints.

37.      Deny the allegation set forth in paragraph 37 of the Complaint with respect to the Goldsmith Photo.

38.      Admit the allegation set forth in paragraph 38 of the Complaint that in 1984 LGLtd, which was formerly known as Lynn Goldsmith Inc., issued a written one-time illustration usage license (the "License") to Vanity Fair for the Goldsmith Photo, but deny that the license was for the referenced "Prince Publicity Photograph" (as defined in the Complaint), and respectfully refer the Court to that License for a complete statement of its terms and conditions.

39.      Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 39 of the Complaint, but aver that Vanity Fair did not

have any right or license from Goldsmith or LGLtd (known in 1984 as Lynn Goldsmith Inc.) to use the Goldsmith Photo beyond the limited purpose set forth in paragraph 38 of this Answer and as further set forth in the License and the Counterclaim herein.

40.     Admit so much of the allegation set forth in in paragraph 40 of the Complaint that Warhol never entered into any agreement with Defendants, but deny the implicit allegation therein that Warhol had the unfettered right to reproduce and commercially market derivative works from the Goldsmith Photo without Goldsmith's permission and license.

41.     Admit the allegations set forth in paragraph 41 of the Complaint.

42.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 42 of the Complaint.

43.     Admit the allegations set forth in paragraph 43 of the Complaint, except aver that on page 121 of the same 1984 issue, Vanity Fair printed an attribution credit for Goldsmith as the owner of the copyright for the source image, as further set forth in the Counterclaim.

44.     Deny the allegation set forth in paragraph 44 of the Complaint.

45.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 45 of the Complaint.

46.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 46 of the Complaint.

47.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 47 of the Complaint.

48.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 48 of the Complaint.

49.     Deny knowledge or information sufficient to form a belief as to the truth or falsity

of the allegations set forth in paragraph 49 of the Complaint.

50.     Admit the allegation set forth in paragraph 50 of the Complaint.

51.     Admit the allegation set forth in paragraph 51 of the Complaint that Condé Nast published a special magazine called *The Genius of Prince* on or around May 18, 2016, but deny knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth therein.

52.     Admit the allegation set forth in paragraph 52 of the Complaint, and aver that such license fee was $10,000 and that such publication infringed Goldsmith's copyright in the Goldsmith Photo, as further pleaded in the within Counterclaim.

53.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 53 of the Complaint.

54.     Admit that after Condé Nast's publication of the special magazine called *The Genius of Prince*, Goldsmith asserted in or about July 2016 that the use of the Infringing Image on the cover of said publication infringed her copyright in the Goldsmith Photo, and otherwise deny the allegations set forth in paragraph 54 of the Complaint, which further incorrectly characterize and disclose confidential settlement communications.

55.     Admit that Goldsmith was unaware of the referenced *Prince Series*, deny the remaining allegations set forth in paragraph 55 of the Complaint, and aver that Goldsmith was never informed by Vanity Fair, Warhol, or the Foundation, or otherwise made aware of the identity of the artist for the 1984 Vanity Fair article until after Prince died in 2016.

56.      Deny the allegations set forth in the first sentence of paragraph 56 of the Complaint.  With respect to the allegation set forth in the second sentence of paragraph 56 of the Complaint, admit that the Smithsonian Institution infringed Goldsmith's copyright in a different

photograph Goldsmith created of Prince in 1993, and that the matter was resolved by the Smithsonian Institution ceasing such infringing conduct and settling on terms favorable to Goldsmith.

57.     Deny the allegations set forth in paragraph 57 of the Complaint.

58.     Admit the allegation set forth in paragraph 58 of the Complaint, except deny that the allegation quotes the complete Facebook posting, further deny any implication that said posting somehow constitutes an acknowledgment that anything Warhol created was protected by copyright fair use, and aver that the posting concluded with this shout-out to other photographers: "So, don't think anything is fair - just do the best you can to protect yourself."

59.     Admit the allegation set forth in paragraph 59 of the Complaint that Goldsmith was aware that the *Cariou v. Prince* judicial decision had issued, but deny that Goldsmith, as a lay person, understood the actual or potential legal impact of such decision, and aver that said decision remains controversial for experienced copyright attorneys and scholars.

60.     State that the allegations set forth in paragraph 60 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, deny the allegations therein and specifically deny the allegation set forth in the first sentence therein.

61.     Deny the allegations set forth in paragraph 61 of the Complaint, respectfully refer the Court to the referenced Facebook post for its complete content and context, and aver that the allegation of "extortion" is impertinent under Rule 12(f) of the Federal Rules of Civil Procedure and should be stricken, and further aver that the cited Facebook post pre-dated publication of the 2016 Condé Nast's special magazine called *The Genius of Prince* and has no relationship to that act of infringement by the Foundation.

62.     Deny the allegations set forth in paragraph 62 of the Complaint, and respectfully refer the Court to the referenced Facebook post for its complete content and context

63.     Deny the allegations set forth in paragraph 63 of the Complaint.

## FIRST CAUSE OF ACTION

64.     Repeat and reallege each and every response to paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.     State that the allegations contained in paragraph 65 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admit that there is a dispute between the parties as to whether the unauthorized Infringing Image, which continues to be commercially licensed and exploited by the Foundation, infringes Goldsmith's copyright in her Goldsmith Photo and is not entitled to a fair use defense.

66.     Deny the allegations set forth in paragraph 66 of the Complaint.

## SECOND CAUSE OF ACTION

67.     Repeat and reallege each and every response to paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68.     State that the allegations contained in paragraph 68 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admit that there is a dispute between the parties as to whether the unauthorized Infringing Image, which continues to be commercially licensed and exploited by the Foundation, infringes Goldsmith's copyright in her Goldsmith Photo and is not entitled to a fair use defense.

69.     Deny the allegations set forth in paragraph 69 of the Complaint.

**THIRD CAUSE OF ACTION**

70.     Repeat and reallege each and every response to paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71.     State that the allegations contained in paragraph 71 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admit that there is a dispute between the parties as to whether the unauthorized Infringing Image, which was commercially licensed by the Foundation to Condé Nast for the 2016 Publication, infringed the copyright in the Goldsmith Photo within the Copyright Act's three-year statute of limitations and the Foundation's frivolous claim to the contrary.

72.     Deny the allegations set forth in paragraph 72 of the Complaint.

73.     Deny the allegations set forth in paragraph 73 of the Complaint.

**FOURTH CAUSE OF ACTION**

74.     Repeat and reallege each and every response to paragraphs 1 through 73 of the Complaint as if fully set forth herein.

75.     State that the allegations contained in paragraph 75 of the Complaint are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admit that there is a dispute between the parties as to whether the unauthorized Infringing Image, which was commercially licensed by the Foundation to Condé Nast for the 2016 Publication, infringed the copyright in the Goldsmith Photo within the Copyright Act's three-year statute of limitations and the Foundation's frivolous laches claim to the contrary, especially in light of the Supreme Court's decision in *Petrella v. Metro-Goldwyn-*

*Mayer, Inc.*, 134 S. Ct. 1962, 188 L. Ed. 2d 979, 572 US __ (2014) .

76.    Deny the allegations set forth in paragraph 76 of the Complaint.

77.    Deny the allegations set forth in paragraph 77 of the Complaint.

78.    Deny the allegations set forth in paragraph 78 of the Complaint, except admit that Warhol died.

79.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 79 of the Complaint.

80.    Deny the allegations set forth in paragraph 80 of the Complaint.

81.    Deny the allegations set forth in paragraph 81 of the Complaint, and aver that the Foundation is a hugely successful commercial enterprise, despite its not-for-profit veneer, which earns millions of dollars annually in commercial licensing revenues and royalties.

82.    Deny the allegations set forth in paragraph 82 of the Complaint.


**DEFENDANTS' AFFIRMATIVE DEFENSES**

FIRST DEFENSE

1.    The Complaint fails to state a claim upon which relief may be granted.

SECOND DEFENSE

2.    Plaintiff's claims are barred in whole or in part by the doctrines of estoppel and unclean hands.

THIRD DEFENSE

3.    Plaintiff's infringing use of the Goldsmith Photo is not entitled to a fair use defense under 17 U.S.C. § 107.

FOURTH DEFENSE

4.    Defendant Goldsmith's infringement claim is not barred by the statute of

limitations under 17 U.S.C. § 507 because the Foundation's infringing act occurred in 2016, well within the statutory three-year limitations period.

FIFTH DEFENSE

5.      Defendant Goldsmith's infringement claim is not barred by laches because the claim is brought within the statutory three-year limitations period under 17 U.S.C. § 507 and the Supreme Court held in *Petrella* that laches is not a defense to a claim for copyright infringement brought within that limitations period.

**DEFENDANT'S LYNN GOLDSMITH'S COUNTERCLAIM
FOR COPYRIGHT INFRINGEMENT AGAINST THE
ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.**

**NATURE OF THE COUNTERCLAIM**

1.      This is a civil action seeking damages, profits and injunctive relief for copyright infringement under the United States Copyright Act of 1976 (17 U.S.C. § 101 et seq.), based on the Defendant Foundation's willful and unauthorized use, reproduction, publication, distribution and commercial licensing of a derivative version of Plaintiff Lynn Goldsmith's 1981 black and white photographic portrait (the "Goldsmith Photo") of the recording artist and performer Prince Rogers Nelson ("Prince"). That derivative version was created by Andy Warhol in 1984 for publication in *Vanity Fair* under license from Goldsmith's company, and was newly published with color changes (the "Infringing Image") by Condé Nast on the cover of a May 9, 2016, special Prince tribute magazine (the "2016 Publication") under a paid commercial license from the Foundation's licensing agency, not Goldsmith.

2.      The original black and white Goldsmith Photo appears as follows:

-13-



3.      The Infringing Image appeared as follows on the cover of the 2016 Publication:



4.      The Foundation knew or should have known that the creation and publication by
Vanity Fair of the Infringing Image in 1984 was expressly licensed by Goldsmith's company for
one-time use only as an artist's reference for illustrative purposes, and that any further use of the
Infringing Image as a derivative work of the Goldsmith Photo would require a new license or
otherwise be an infringing use.

5.      The Infringing Image retains and captures all the essential and distinctive

elements of the Goldsmith Photo, from the detailed hair curls atop Prince's head to the long fall

of hair down the left side of his face, the overall composition and Prince's head pose, the deep-

set intensity of Prince's eyes, his pursed lips, facial hair details, and his self-reflective stare into

the eye of the camera as if pondering his newfound stardom.  This is starkly evident when the

Infringing Image is superimposed over the original Goldsmith Photo and then compared to the

Goldsmith Photo, as follows:




Infringing Image                    Goldsmith Photo

     6.     While the Foundation is a not-for-profit entity, it is also a money-making

commercial machine, earning millions of dollars in revenues annually from commercial licensing

fees and royalties, and sales of original Warhol works.

     7.     The Infringing Image was licensed for a $10,000 fee to Condé Nast by the

Foundation's licensing agent, the Artists Rights Foundation ("ARS") and, upon information and

belief, remains available for commercial licensing in the same or very similar formats.

     8.     There is no doubt that the Foundation is profiting from its infringing acts

concerning the Goldsmith Photo, thereby depriving Goldsmith of actual and potential economic benefits she would have earned and could earn from licensing rights to the Goldsmith Photo, including to Condé Nast and others, and further diluting Goldsmith's ability to sell the Goldsmith Photo as one of her limited edition fine art prints or in other forms.

9. Goldsmith is an acclaimed celebrity portrait, documentary and fine art photographer, whose works are in the collections of The Smithsonian National Portrait Gallery, The Museum of Modern Art, The Chicago Museum of Contemporary Photography, The Rock and Roll Hall of Fame, Museum Folkwang, The Polaroid Collection, The Kodak Collection, and others. Over the past 50 years of a long and illustrative career, her editorial photography has appeared on and between the covers of *Life, Newsweek, Time, Vanity Fair, Rolling Stone, National Geographic Traveler, Sports Illustrated, People, Elle, Interview, The New Yorker* and many other esteemed publications. She has chronicled Bruce Springsteen's rise to fame, the Rolling Stones' stadium tours, and Michael Jackson's and Prince's ascents to stardom, and photographed cultural music icons including Bob Dylan and Patti Smith. Thirteen books of Goldsmith's imagery have been published, including *New Kids*, which was on *The New York Times Best Seller* list, a rare occurrence for a coffee table book of photography. Goldsmith has received two New York Art Direction awards and numerous prestigious awards, from the Lucien Clergue to the World Press in Portraiture. Goldsmith is also a gifted film director, having been the youngest woman member ever to be accepted into the Director's Guild of America. In the early 1980s, under the pseudonym "Will Powers," she produced and directed highly acclaimed videos for the hit album *Dancing For Mental Health*, working with acclaimed musicians Sting, Steve Winwood, Todd Rundgren and Nile Rodgers, and the videos from the album that she produced and directed were used by the United States Department of Labor to inspire

unemployed youths, and by the National Marriage Counsel in England. Goldsmith has been a pioneer in professional photography and founded the first photo agency that focused on celebrity portraiture, which represented the works of over 200 worldwide photographers. Her photographs have been widely exhibited at numerous exhibitions, galleries, museums and art fairs in the United States and abroad.

10.     Goldsmith's life has been dedicated to the pursuit and perfection of her art, which is no less deserving of protection than Andy Warhol's creations, with the exception that Goldsmith did not see a need to appropriate works of others and claim ownership of them to the detriment of the original creator.

11.     Goldsmith's livelihood is largely dependent on the licensing market for her photography, and the Infringing Image, as used in the 2016 Publication, destroyed a high profile licensing opportunity for her.

12.     To the extent the Foundation seeks to hide behind a copyright fair use defense for its unauthorized exploitation of the Infringing Image, its overt commercial use of the Infringing Image for profit and the lack of any transformative use of the Goldsmith Photo preclude such defense.

13.     Goldsmith intends to donate any net economic recovery she may be awarded in this action to one or more groups that are working to protect photographers' rights and copyrights.

### JURISDICTION AND VENUE

14.     This is a civil action arising from the Defendant Foundation's violation of the copyright laws of the United States (17 U.S.C. § 101 et seq.). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15.     Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial

part of the events giving rise to Counterclaim-Plaintiff's claim occurred in this District and Defendant Foundation is located in New York.

16. On November 17, 2016, Goldsmith, through her attorney, filed an electronic application with the U.S. Copyright Office for registration of the Goldsmith Photo, with a creation date of 1981 and Goldsmith designated as both author and copyright claimant. A Certificate of Registration issued for the Goldsmith Photo, effective November 16, 2016, with Registration Number VAu 1-277-562 (entitled "Prince Portrait"). A true and complete copy of this Certificate of Registration is annexed hereto as Exhibit "A."

## PARTIES

17. Counterclaim-Defendant The Andy Warhol Foundation For The Visual Arts, Inc. (the "Foundation"), upon information and belief, is a not-for-profit New York corporation with a principal place of business at 65 Bleecker street, New York, New York 10012.

18. Counterclaim-Plaintiff Goldsmith is an individual residing in the State of Colorado, with a business address at 40 Sunset Drive, Unit 10A, Basalt, CO 81621.

## FACTUAL ALLEGATIONS

### The Creation and Licensing of the Goldsmith Photo to Vanity Fair

19. In 1981, Goldsmith took a series of photographic studio portraits of music legend Prince that were created for an editorial assignment for Newsweek magazine. Goldsmith was the sole photographer for that assignment and retained all copyrights in the photographs she created during that photo shoot. It was common industry practice that any time professional photographers shot on editorial assignment it was for one time usage rights for set space rates, and the photographers always retained copyright ownership of their own photos, as did Goldsmith.

20. In the fall of 1984, Vanity Fair's photo department solicited photo agency Lynn

Goldsmith Inc. ("LGI"), later re-named Lynn Goldsmith, Ltd., for submission of one of the Prince images from the 1981 Newsweek photo shoot.  The image was to be used as reference for an illustration in an article about Prince and his rise to stardom.  LGI submitted initial sample photo images to Vanity Fair.  The photo ultimately selected by Vanity Fair was the Goldsmith Photo, as set forth in paragraph 2 of this Counterclaim.

21.     As evidenced by a written license agreement dated October 29, 1984 (the "License"), LGI photo agency granted to Vanity Fair one-time English language, North American distribution rights, to use the Goldsmith Photo "as artist reference for an illustration to be published in Vanity Fair November 1984 issue."  The License further limited use of the Goldsmith Photo for "full page and one time under quarter page" use and expressly stated: "NO OTHER USAGE RIGHT GRANTED." The License further stated the Goldsmith Photo 1981 copyright was owned by "Lynn Goldsmith" and required that Goldsmith be given attribution credit.  A true and complete copy of the License is annexed hereto as Exhibit "B."

22.     At the time the License was granted, it was common policy for all magazines that requested artist reference images not to inform the photographer of the artist's identity.  Typically, the magazine's photo department would obtain an image for the magazine's separate art department, so the photo department also would not know of the artist's identity.

23.     Vanity Fair ultimately published a feature article about Prince in its November 1984 issue that was accompanied by a full page image of Prince derived directly from the Goldsmith Photo.  The image appeared as reproduced in paragraph 43 of the Complaint as follows (on page 67 of the Vanity Fair issue):



24.    On page 121 of the 1984 Vanity Fair publication, as required by the License, the

following attribution credit was given to Goldsmith: "**Page 67**: source photograph © 1984 by

Lynn Goldsmith/LGL." Warhol was therefore placed on notice that Goldsmith owned the

copyright in the underlying work.   A true and correct copy of that credit page (with the

attribution highlighted) appears as follows:



25. Another copy of the 1984 Vanity Fair publication is currently posted on Vanity Fair's website at http://www.vanityfair.com/culture/2016/04/prince-at-the-height-of-his-powers, which contains attribution credit to Goldsmith printed in the lower spine and co-attribution credit to Goldsmith printed on the bottom of the first page of the article, as follows:



By Lynn Goldsmith/LGI/Andy Warhol Foundation.

26.     At the time LGI issued the License, LGI was not advised by Vanity Fair who the artist would be for the illustration, but only that the illustration would be based on the Goldsmith Photo.

27.     Only after Prince died in 2016 did Goldsmith first become aware that Warhol had been the artist for the 1984 Vanity Fair article and that Warhol had subsequently made multiple unauthorized commercial uses of the Goldsmith Photo outside the permitted limited scope of the License.

### 2016 Licensing and Publication of the Infringing Image

28.     Following Prince's tragic death in 2016, Condé Nast created and released the 2016 Publication as a special tribute issue to Prince's life, using for its cover a different color version of the same image Warhol had created for Vanity Fair in 1984, based on the Goldsmith Photo, as depicted in paragraph 3 of this Counterclaim.

29.     The Infringing Image used in the 2016 Publication differs from the image used in the 1984 Vanity Fair publication to the extent the colors were changed, but the Infringing Image in the 2016 Publication continued to capture the same essence of the Goldsmith Photo, as did the 1984 Vanity Fair image. The following comparison shows the images appearing in the 2016 Publication and the 1984 Vanity Fair issue, respectively, juxtaposed with the Goldsmith Photo:

  

30.     Upon information and belief, Condé Nast licensed the Infringing Image used on the cover of the 2016 Publication from the Foundation's third-party licensing agency, ARS, in exchange for payment of a $10,000 licensing fee.

31.     No attribution credit was given to Goldsmith in connection with the 2016 Publication cover image.

32.     Plaintiff Goldsmith does not presently know if the Foundation has made additional unauthorized infringing uses of the Goldsmith Photo within the past three years, and reserves the right to amend this Counterclaim to add any such additional acts of infringement.

**The Foundation Knew or Should Have Known That it
Needed Permission to License the Infringing Image to Condé Nast**

33.     Defendant Foundation knew, as did Warhol himself, that using other photographers' works to create derivative works required their consent. During his lifetime, Warhol's was sued for copyright infringement by photographers at least several times for acts of unauthorized copying in the form of appropriation art, similar to the Foundation's licensing and exploitation of the Infringing Image.

34.     In or about 1966, Warhol was sued in the Southern District of New York (Docket No. 66 Civ. 3776) for copyright infringement by photographer Patricia Caulfield for using her photograph of hibiscus flower blooms, which had been published in the June 1964 issue of *Modern Photography*, to create an authorized derivative silk-screen work called *Flowers*. Upon information and belief, Warhol settled with Caulfield.

35.     Upon information and belief, in the 1960s, a copyright infringement claim was made against Warhol by legendary photographer Fred Ward for Warhol's unlicensed use of Ward's iconic cover photo that was used in *Life* magazine's Kennedy assassination issue, which Warhol had appropriated for his own Jacqueline Kennedy images; that claim settled.

36.     Upon information and belief, in the 1960s, a copyright infringement claim was made against Warhol by the renown civil rights photographer Charles Moore for Warhol's misappropriation of Moore's famous photograph of a man being attacked by police dogs during the 1963 Birmingham riots; that claim also settled.

37.     Upon information and belief, subsequent to the Caulfield, Ward and Moore infringement claims, Warhol began seeking permission to use publicity and media photographs for his print, or taking his own photographs. Nevertheless, the Foundation has continued to infringe photographers' rights with impunity.

38.     In or about 1996, the Foundation was sued in the Southern District of New York (Docket No. 96 Civ. 9219 (TPG)) for copyright infringement by photographer Henri Dauman and Time, Inc., over publication of a 1994 museum book and a 1995 engagement calendar, both of which used an iconic 1963 photograph by Dauman of Jackie Kennedy that had appeared in the December 1963 issue of *Life*.   *Dauman v. The Andy Warhol Foundation for the Visual Arts, Inc.*, 1997 WL 337488 (S.D.N.Y. June 18, 1997; Griesa, J.) (denying a motion to dismiss).   As set forth in that decision, following President Kennedy's death, Warhol created "a series of artworks by reproducing images of Jacqueline Kennedy; that Warhol used a total of eight 'source images' culled from newspapers and magazines; and that one of these images ('the Dauman Image') was taken from the Dauman photograph published in Life."   Dauman alleged he only first became aware of the misappropriation after publication of the museum book and calendar.   The Foundation also settled that claim.

### The Foundation's Actions Were and Remain Wholly Commercial in Nature

39.     Despite its alleged not-for-profit altruistic veneer, the Foundation is a money-making machine that earns many millions of dollars annually in commercial revenues. According to the Foundation's filed Form 990-PF Return of Private Foundation for the years 2012 through 2015 alone, the Foundation earned over $19 million from commercial royalties and licensing fees, and over $49 million from the sale of artwork, as follows:

2012 990-PF - Sales of art: $24,820,967       Royalties & fees: $4,687,475

2013 990-PF - Sales of art: $10,856,351       Royalties & fees: $4,530,428

2014 990-PF - Sales of art: $7,742,434       Royalties & fees: $5,591,408

2015 990-PF - Sales of art: $6,281,111       Royalties & fees: $4,694,230

40.     As pleaded herein, in keeping with the Foundation's commercial business model,

the Infringing Image was also licensed for a fee to Condé Nast for the 2016 Publication.

## CLAIM FOR RELIEF (17 U.S.C. §§ 106, 501)

41.     Goldsmith hereby incorporates paragraphs 1 through 40 of this Counterclaim as if fully set forth at length herein.

42.     Defendant Foundation has infringed Goldsmith's exclusive rights as the copyright owner of the Goldsmith Photo by reproducing, publicly displaying, commercially licensing  and distributing the Infringing Image, and by incorporating the Goldsmith Photo into unauthorized derivative works, including the Infringing Image printed in the 2016 Publication.

43.     The Foundation holds itself out as the exclusive copyright owner of the Infringing Image and authorized ARS to enter into commercial licensing and other monetizing transactions for the Infringing Image, including for the 2016 Publication.

44.     Neither Warhol nor the Foundation has ever provided attribution credit to Goldsmith as the photographer and copyright owner of the Goldsmith Photo, which the Foundation has exploited and continues to exploit commercially, thereby misleading the public into falsely believing the Infringing Image was created solely by Warhol.

45.     The Foundation knew or should have known that its unauthorized use of the Infringing Image infringed Goldsmith's exclusive rights under the Copyright Act or, alternatively, recklessly and irresponsibly ignored such possibility.

46.     Defendant Foundation's infringing acts have caused and continue to cause injury to Goldsmith to an extent as yet to be determined.

### PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaim-Plaintiff Lynn Goldsmith pray that this Court enter judgment in their favor against Defendant The Andy Warhol Foundation for the Visual Arts, Inc. as follows:

1.    Dismissing the Plaintiff Foundation's claims for declaratory relief in all respects, with prejudice;

2.    Finding that Counterclaim-Defendant Foundation has infringed Plaintiff Goldsmith's exclusive rights in the Goldsmith Photo under 17 U.S.C. § 106;

3.    Finding that Counterclaim-Defendant Foundation is not entitled to a fair use defense under 17 U.S.C. § 107;

4.    Finding that Counterclaim Plaintiff Goldsmith's infringement claim is not barred by the applicable statute of limitations under 17 U.S.C. § 507;

5.    Finding that Counterclaim Plaintiff Goldsmith's infringement claim is not barred by the doctrine of laches;

6.    Granting Plaintiff Goldsmith permanent injunctive relief, enjoining the Foundation from further reproducing, modifying, preparing derivative works from, selling, offering to sell, publishing or displaying the Infringing Image and any other Warhol-created works that are substantially similar to the Goldsmith Photo or Infringing Image, under 17 U.S.C. § 502;

7.    Granting Counterclaim Plaintiff Goldsmith actual damages and all profits earned by the Foundation attributable to infringement of the Goldsmith Photo in accordance with proof;

8.    Finding that Plaintiff Foundation cannot assert copyright protection in the Infringing Image, and any other Warhol-created works that are substantially similar to the Goldsmith Photo or Infringing Image, because they are unauthorized derivative works;

9.      Granting Defendants an award for their costs and disbursements of this action;

10.     Granting Defendants an award for their attorney's fees incurred in this action under 17 U.S.C.§ 505 with respect to any infringing uses by the Foundation of the Goldsmith Photo subsequent to its effective date of registration by the United States Copyright Office and with respect to the Foundation's Declaratory Judgment Complaint;

11.     With respect to any infringing uses by the Foundation of the Goldsmith Photo subsequent to its effective date of registration by the United States Copyright Office, as an alternative to an award of damages and profits, granting Counterclaim Plaintiff Goldsmith statutory damages to be elected before trial under 17 U.S.C.§ 504;

12.     Revising the caption of this action at the time of trial to place Counterclaim Plaintiff in the position of the Plaintiff and the Foundation in the position of Defendant based on the Foundation's anticipatory filing of the present declaratory relief action; and

13.     Granting  such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            July 10, 2017

HERRICK, FEINSTEIN LLP

By: _____ s/ Barry Werbin, Esq.
        Barry Werbin, Esq.
        Gabrielle C. Wilson, Esq.
2 Park Avenue
New York, NY 10016
(212) 592-1418
bwerbin@herrick.com

LAW OFFICES OF JOEL L. HECKER
Joel L. Hecker, Esq.
230 Park Avenue, Suite 660
New York, NY 10169
(212) 481-1850
HeckerEsq@aol.com
*Attorneys for Lynn Goldsmith and Lynn Goldsmith, Ltd.*

# EXHIBIT A

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kayn Teyle Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## VAu 1-277-562

**Effective Date of Registration:**
November 17, 2016

---

## Title

**Title of Work:** Prince Portrait

## Completion/Publication

**Year of Completion:** 1981

## Author

- **Author:** Lynn Goldsmith
  **Author Created:** photograph
  **Citizen of:** United States
  **Year Born:** 1948

## Copyright Claimant

**Copyright Claimant:** Lynn Goldsmith
40 Sunset Drive, Unit 10A, Basalt, CO, 81621, United States

## Certification

**Name:** Joel L. Hecker
**Date:** November 17, 2016

**Correspondence:** Yes

**Registration #:** VAu001277562
**Service Request #:** 1-4178540771

Abrams Deemer PLLC
Joel L. Hecker
230 Park Avenue
Suite 660
New York, NY 10169 United States

# EXHIBIT B

# L G I
# LYNN GOLDSMITH INC.

241 West 36th Street, Loft 7

New York, New York 10018

(212) 736-4602, Telex: 971782

5579

WR

|  |  |  |  |
|---|---|---|---|
| **RENTED TO** | VANITY FAIR<br>350 MADISON AVENUE<br>NYC, NY 10017 | **DATE** | OCTOBER 29, 1984 |
|  |  | **YOUR P.O. NO.** |  |
|  |  | **ORDERED BY** | ESIN GOKNAR |

**TERMS: NET 30 DAYS**          **ATTENTION:**

| QUANTITY | DESCRIPTION | PRICE |
|---|---|---|

FEE FOR THE USE OF ONE PHOTOGRAPH OF PRINCE, COPYRIGHT 1981 LYNN GOLDSMITH
FOR USE AS ARTIST REFERENCE FOR AN ILLUSTRATION TO BE PUBLISHED IN VANITY FAIR
NOVEMBER 1984 ISSUE. IT CAN APPEAR ONE TIME FULL PAGE AND ONE TIME UNDER ONE QUARTER PAGE.
NO OTHER USAGE RIGHT GRANTED.

ONE TIME USE ENGLISH LANGUAGE ONLY NORTH AMERICAN DISTRIBUTION ONLY



PAID
DATE DEPOSITED
CHECK NO.
2/8/85

License is granted to use or reproduce above-described photograph(s) on condition that total amount shown hereon is paid.

This credit line — LYNN GOLDSMITH — must not be omitted, abbreviated or altered under penalty of double charge.

Released, on rental basis only, and in accordance with terms and conditions of submission. License, for one reproduction only, is granted to reproduce above-described photograph(s) in

IN VANITY FAIR NOVEMBER 1984 ISSUE

Separate reproduction fee must be paid for each subsequent edition, revised edition, new edition, paperback edition, book club edition, foreign edition and/or foreign language edition of the aforesaid book containing the above-described photograph(s). No license is granted to reproduce the above-described photograph(s) in United States or foreign newspapers or magazines or for other purposes without prior permission in writing from and payment to Lynn Goldsmith.

Other than for the purpose indicated herein, photograph(s) may not be reproduced or utilized in any form or by any means, electronic or mechanical, including photocopying, recording or by any information storage and retrieval system without permission in writing from and payment to Lynn Goldsmith.

Reproduction or use rights only are sold. Photographs are rented only and must be returned to us immediately after use. An appropriate charge will be made for loss, damage or mutilation in accordance with terms and conditions of submission.