UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.,<br><br>Plaintiff,<br><br>-against-<br><br><br>LYNN GOLDSMITH AND LYNN GOLDSMITH, LTD.,<br><br>Defendants. | No. 17-cv-02532-JGK |
| LYNN GOLDSMITH,<br><br>Counterclaim Plaintiff,<br><br>-against-<br><br><br>THE ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.,<br><br>Counterclaim Defendant. | |

**THE ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Dated: December 11, 2018

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Luke Nikas
Maaren A. Shah
Daniel Koffmann
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
lukenikas@quinnemanuel.com
maarenshah@quinnemanuel.com
danielkoffmann@quinnemanuel.com

*Attorneys for Plaintiff The Andy Warhol Foundation for the Visual Arts, Inc.*

TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ..................................................................................................................................... 1

I. THE PRINCE SERIES IS NOT SUBSTANTIALLY SIMILAR TO THE PROTECTED ELEMENTS OF THE PRINCE PHOTOGRAPH .................................................................... 1

II. THE PRINCE SERIES MAKES FAIR USE OF GOLDSMITH'S PHOTOGRAPH .............................. 3

    A. Goldsmith's Heavy Reliance On Commercial Use Is Misplaced ........................... 3

    B. Dr. Crow's Opinion Is Admissible And Should Be Considered ............................ 4

    C. Printz's Testimony Is Admissible As Fact And Lay Opinion Testimony .............. 6

    D. The Third Factor Favors Fair Use ........................................................................... 7

    E. Goldsmith Has Not Established Market Harm ....................................................... 8

CONCLUSION ................................................................................................................................. 10

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*,
    2013 WL 4666330 (D. Minn. 2013) .................................................................................. 5

*Astra Aktiebolag v. Andrx Pharm., Inc.*,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) ............................................................................... 5

*Author's Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014) ............................................................................................. 10

*Belair v. MGA Entm't, Inc.*,
    831 F. Supp. 2d 687 (S.D.N.Y. 2011) ............................................................................... 1

*Bill Diodato Photography, LLC v. Kate Spade, LLC*,
    388 F. Supp. 2d 382 (S.D.N.Y. 2005) ........................................................................... 1, 3

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006) ......................................................................................... 4, 6

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ......................................................................................................... 3

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013) ................................................................................... passim

*United States v. Garcia*,
    413 F.3d 201 (2d. Cir. 2005) ............................................................................................ 7

*Hewitt v. Metro-N. Commuter R.R.*,
    244 F. Supp. 3d 379 (S.D.N.Y. 2017) ............................................................................... 4

*Kienitz v. Sconnie Nation*,
    766 F.3d 756 (7th Cir. 2014) ........................................................................................ 7, 8

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995) ............................................................................................... 2

*LaChapelle v. Fenty*,
    812 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................................... 1, 2, 3

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997) ............................................................................................. 7

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010) .................................................................................. 10

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) ..................................................................................................... 2

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ........................................................................................... 1, 3

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992) ............................................................................................. 5, 6

*Salinger v. Random House, Inc.*,
    811 F.2d 90 (2d Cir. 1987) .................................................................................................... 8

*Scott v. Chipotle*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................................. 9

*U.S. v. Locascio*,
    6 F.3d 924 (2d Cir. 1993) ...................................................................................................... 5

**Rules / Statutes**

17 U.S.C. § 107(1) .......................................................................................................................... 3

Fed. R. Evid. 701 ............................................................................................................................ 7

Fed. R. Evid. 702 .......................................................................................................................... 10

Fed. R. Evid. 702(a) ....................................................................................................................... 4

Fed. R. Evid. 703 ............................................................................................................................ 5

**Other Authorities**

Merriam-Webster.com .................................................................................................................... 5

**ARGUMENT**

I. **THE PRINCE SERIES IS NOT SUBSTANTIALLY SIMILAR TO THE PROTECTED ELEMENTS OF THE PRINCE PHOTOGRAPH**

Goldsmith says the Court must consider her photograph as a whole—including its unprotected elements—when evaluating whether it is "substantially similar" to Warhol's Prince Series. (Goldsmith Opp. 2-4.) She does this because she conceded in her deposition that the only similarity between the works lies in an *unprotected* element: Prince himself. (AWF R56.1 (Dkt. 56) ¶115; AWF Br. (Dkt. 55) 31-34; AWF Opp. (Dkt. 68) 19-23.) But Goldsmith cannot avoid the core of the substantial similarity test—that only *protectable* elements of her photograph may be considered. *E.g.*, *Belair v. MGA Entm't, Inc.*, 831 F. Supp. 2d 687, 692 (S.D.N.Y. 2011); *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 389-90 (S.D.N.Y. 2005); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1122-23 (9th Cir. 2018); *see also* AWF Br. 28-30. The "similarities" identified by Goldsmith between the works, in Prince's appearance and reflected light from his features (Goldsmith Opp. 9), flow naturally from the subject and are not protectable. (AWF Opp. 21-23.) Because the only similarities between the works lie in unprotected elements—Prince, his pose—or elements flowing therefrom, Goldsmith's infringement claim fails. (AWF Br. 31-34; AWF Opp. 19-23.)

Goldsmith also argues that the Court should consider the "overall look and feel" of the works, rather than "dissecting" the works into their separate components. (Goldsmith Opp. 2-3.) But this does not mean that the Court may consider the unprotectable elements of Goldsmith's photograph. Goldsmith's own authority, *LaChapelle v. Fenty*, contradicts her baseless position: "when faced with works that have both protectable and unprotectable elements, the usual ordinary observer test becomes more discerning, and the Court must attempt to extract the unprotectable elements from consideration and ask whether the protectable elements, standing

1

alone, are substantially similar." 812 F. Supp. 2d 434, 441 (S.D.N.Y. 2011) (quotation marks and alterations omitted). Only *after* accounting for this more discerning test is the court guided by the "overall feel" of the works, taking into account the aggregate effect of the similarities between the *protectable* elements "considered in relation to one another." *Id.* Goldsmith's other authorities undermine her position for this same reason. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995).

In *LaChapelle*, the court did the opposite of what Goldsmith requests. It first "considered which elements of the [original] Photographs are *not* protectible" and excluded those elements from its analysis. *Id.* at 445-46. It then compared only the original protected elements of the photographs to the video, and found substantial similarity in such "peculiar original expressions" as, among others, (1) "hot-pink and white striped walls," (2) "two single-hung windows [on] the back wall" with (3) "glossy hot-pink casings" that exhibited (4) "a half-vector pattern of stripes against a yellow background," (5) "a hot-pink couch under the windows," and (6) "women wearing frizzy red wigs," each of which contributed to a "frantic and surreal mood." *Id.* at 446:

 

No such original aesthetic similarity between the Prince Photograph and Prince Series exists. (AWF Br. 31-32.)

Goldsmith criticizes AWF for "improperly dissect[ing]" elements of the works. (Goldsmith Opp. 3.) But AWF's analysis is consistent with governing law. *E.g.*, *LaChapelle*, 812 F. Supp. 2d at 445-46; *Kate Spade*, 388 F. Supp. 2d at 390; *Rentmeester*, 883 F.3d at 1119. It is Goldsmith who improperly dismisses points of dissimilarity as individually *de minimis* (Goldsmith Opp. 4), and ignores the other overwhelming dissimilarities identified by AWF. (AWF Br. 31-32.)

## II. THE PRINCE SERIES MAKES FAIR USE OF GOLDSMITH'S PHOTOGRAPH

### A. Goldsmith's Heavy Reliance On Commercial Use Is Misplaced

Goldsmith focuses her arguments about fair use on AWF's "commercial use" of the Prince Series in the two instances of alleged infringement that fall within the limitations period. (Goldsmith Opp. 9-14.) But the question is not how AWF is using images of the works now, but how *Warhol* used Goldsmith's photograph when *creating* the Prince Series. *See* 17 U.S.C. § 107(1); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-79 (1994). And, specifically, whether Warhol's use was transformative. *See Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013) (recognizing that "[the commerciality] factor must be applied with caution because…Congress 'could not have intended' a rule that commercial uses are presumptively unfair;" "[a]lthough there is no question that Prince's artworks are commercial, we do not place much significance on that fact due to the transformative nature of the work.") (citing *Campbell*, 510 U.S. at 584).

Goldsmith ignores binding authority holding that "transformation is the heart of the fair use inquiry." (AWF Br. 38.) She also ignores that "[t]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a

3

finding of fair use." *Cariou*, 714 F.3d at 708 (citation omitted). That is because the Prince Series is transformative. Warhol transformed Goldsmith's photograph in aesthetic appearance, meaning, and message. (AWF Br. 38-39.) Goldsmith is wrong that Warhol's Prince works change merely the "expressive character" and do not convey "distinct or communicative objectives" apart from the essence of Prince portrayed in Goldsmith's photograph. (Goldsmith Opp. 11.) Warhol's Prince Series does not communicate the essence of Prince *at all*. Warhol portrays him as a symbolic totem of idolatry. (AWF Br. 39.)

Goldsmith fails to distinguish the impact of *Blanch v. Koons* on these issues. (Goldsmith Opp. 10-11.) *Blanch* focused on transformation, *not* commercial uses of Koons' work. 467 F.3d 244, 251-54 (2d Cir. 2006). Further—unlike Warhol—Koons directly incorporated portions of the underlying photographs before transforming and adding other content. *Id.* at 248. Warhol did not incorporate *any* portion of Goldsmith's actual photograph; he created new works entirely. (AWF R56.1 ¶115.)

Regardless, even if the court gave "commercial use" the undue weight Goldsmith wants, this approach would not help her, because AWF is a not-for-profit foundation that uses licensing revenue to fund substantial grants to support the visual arts and further its educational mission. (AWF Counterstmt. (Dkt. 70) ¶238.)

### B. Dr. Crow's Opinion Is Admissible And Should Be Considered

Goldsmith argues that Dr. Crow's expert opinion should be disregarded. She's wrong.

Dr. Crow is an expert in the art and career of Andy Warhol. He offers opinions about various topics regarding Warhol, such as Warhol's artistic process and the way in which his works have been discussed, interpreted, and described. (AWF R56.1 ¶¶27-29, 31-36, 119-24.) This information unquestionably "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Hewitt v. Metro-N. Commuter R.R.*, 244 F.

4

Supp. 3d 379, 385 (S.D.N.Y. 2017); *Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, 2013 WL 4666330, at *21 (D. Minn. 2013).[1]  Dr. Crow's opinion is also probative of AWF's reasonable belief that its licensing of Warhol's Prince works was permitted, in defense to Goldsmith's allegations of willful infringement.  Moreover, contrary to Goldsmith's assertion, Dr. Crow's use of the word "transform" did not attempt to convey a legal opinion.  "Transform" is an ordinary word in the dictionary, not just a legal standard, and Dr. Crow made clear that he intended the word's ordinary meaning.  AWF 56.1 ¶¶27-29 (describing transformation in Warhol's work)); *Transform*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/transform.

Goldsmith's argument that *Cariou* discourages consideration of expert testimony in the fair-use inquiry (Goldsmith Opp. 15) is misleading and wrong.  *Cariou* did not consider expert evidence because none was offered in that case.  But *Cariou did* consider artist Richard Prince's testimony about the meaning of his works, in addition to a visual comparison.  714 F.3d at 707-08.  Goldsmith's reliance on *Rogers v. Koons* (Goldsmith Opp. 18) is unpersuasive for the same reason: the court did not rely "solely" on Koons' explanation of his art, but did consider that evidence in addition to visual comparison—just like evidence about Warhol's art, as explained by Dr. Crow, must be considered here.  960 F.2d 301, 309-10 (2d Cir. 1992).

AWF's *amicus* brief in *Cariou* is consistent with these principles.  AWF critiqued the district court in *Cariou* for basing its assessment *solely* on artist Richard Prince's subjective

---

[1] Further, an expert may rely on inadmissible hearsay to support his or her opinions.  *See* Fed. R. Evid. 703; *U.S. v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); *Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 491 (S.D.N.Y. 2002).

testimony of intent.  Contrary to Goldsmith's assertion (Goldsmith Opp. 10), AWF did not advocate that such evidence should *never* be considered in favor of observation alone.  Rather, AWF stated that such evidence was relevant and informative.  (Werbin Supp. Exh. QQQ 33.)  Although AWF should win easily on observation alone, an artist's intent, as well as facts and commentary about an artist's works, process, and career, should all inform the Court's analysis.  That is what the Second Circuit has consistently done in *Cariou* and other cases.  *See Rogers*, 960 F.2d at 309-10; *Blanch*, 467 F.3d 252-53.  Goldsmith herself relies extensively on her own testimony concerning the meaning and message of her own work.  (Goldsmith Br. (Dkt. 53) 4.)  The fact that Warhol is deceased, and cannot testify, means that expert testimony concerning the message and meaning of his work is even more important here.

Goldsmith claims that Dr. Crow's opinion would be unhelpful to a jury because there's no unifying consensus among scholars regarding every aspect of Warhol's work.  (Goldsmith Opp. 20.)  But that is not the test.  Dr. Crow's opinion is grounded in a methodical and reliable review of the literature and his own expertise, and is therefore admissible.

### C. Printz's Testimony Is Admissible As Fact And Lay Opinion Testimony

Goldsmith also challenges the declaration of Neil Printz, editor of the Andy Warhol Catalogue Raisonné, as expert opinion in "disguise." (Goldsmith Opp. 20-23.)  But she concedes that Printz was "proffered during discovery as a fact witness." (*Id*. 20.)  Printz testified as an employee of AWF, and was questioned at deposition in that capacity.  (Ex. 172 (Printz Dep.) 4:16-19.)  Goldsmith's counsel confirmed that he was "not asking [Printz these questions] as an expert." (*Id*. 42:11-12.)  Goldsmith relies on Printz's testimony as undisputed fact in her own summary judgment brief and 56.1 statement.  (Goldsmith Br. 9-11, 22; Goldsmith R56.1 (Dkt. 52) ¶¶48, 58-60, 65-70.)  The basis for Printz's testimony concerning Warhol's process in creating the Prince Series, which Goldsmith adopts (*e.g.*, Goldsmith R56.1 Opposition (Dkt. 66)

6

¶¶11-12)), is no different from the basis for his testimony concerning Warhol's creation of other works. She cannot have it both ways: relying on aspects of Printz's testimony when it suits her, and rejecting the rest when it does not.

Printz's deposition testimony regarding Warhol's artistic process and works was based, in part, through his firsthand discussions with those who worked with Warhol, examination of inventory and records of Warhol's works, and his experience curating Warhol's works for the Catalogue Raisonné. (Ex. 172 at 16:20-19:9.) Printz's declaration contains further observations based on firsthand knowledge, namely his "education, training, and experience as the editor of The Andy Warhol Catalogue Raisonné" and examination of two of the Prince paintings. (Ex. 2 at 1-2.) His observations are not based on scientific or technical knowledge, but are the "product of reasoning processes familiar to the average person in everyday life" gleaned through his work. *United States v. Garcia*, 413 F.3d 201, 215 (2d. Cir. 2005). Because Printz's testimony and declaration are "rationally based on [his own] perception," Rule 701 is satisfied. Fed. R. Evid. 701; *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997).

Goldsmith's criticism of the reference materials cited in Printz's declaration is also unfounded, as they confirm the basis for Printz's testimony and are relevant to AWF's state of mind and AWF's defense against Goldsmith's allegations that AWF engaged in "willful" and intentional copyright infringement. (Dkt. 20 ¶¶1, 4, 12, 33, 45.)

### D. The Third Factor Favors Fair Use

Goldsmith rejects and ignores *Cariou's* emphasis on transformation. *See supra* 3-4. She embraces *Kienitz's* rejection of transformative use, but then rejects *Kienitz's* core holding as a "misplaced" "comment." (Goldsmith Opp. 23 (citing *Kienitz v. Sconnie Nation*, 766 F.3d 756 (7th Cir. 2014)).) She even rejects her own deposition testimony that her copyright claim is based on the "outline" of Prince's head and face. (*Id.* 24-25.) She does all this because she

7

knows they doom her claim. She loses under *Cariou*. She loses under *Kienitz*. And she must be held to her own testimony.

Goldsmith's factual distinction of *Kienitz* (*id*. 23-24) is unavailing. Like Slogin, a public figure who Goldsmith speculates "could have been photographed in public by many people" (*id*. 23), Prince was photographed extensively—undoubtedly even more so as a world-famous rock star. The "controlled studio environment" in which Goldsmith took this photograph (*id*. 24) does not change the fact that similar photos of Prince abound. As in *Kienitz*, Warhol could easily have achieved the same artistic effect by "starting with a snap-shot." 766 F.3d at 759; AWF Br. 34, 37. Because Warhol's use of Goldsmith's photograph within his Prince Series was *de minimis* (AWF Br. 42), the third factor favors fair use.

### E. Goldsmith Has Not Established Market Harm

Goldsmith does not dispute that there is *no* impact from the Prince Series on the primary (sales) market for her photograph. (*Id.* 39-40.) She focuses exclusively on her hypothetical licensing market. (Goldsmith Opp. 25-29.) But she offers no admissible evidence that the Prince Series "usurps" potential licensing opportunities for the Prince Photograph.[2] *Cariou*, 714 F.3d at 708. Instead, all admissible evidence is to the contrary. (AWF Br. 40-41; AWF Opp. 37-41.)

---

[2] *Salinger* (*id*. 25) concerns only whether fair use is a defense to copying unpublished works. 811 F.2d 90, 95 (2d Cir. 1987). It does not suggest that Goldsmith can construct proof of an actual licensing market (much less market usurpation) from the mere presumption that she holds a copyright in her unpublished work.

With no direct proof concerning the Prince Photograph, she attempts to manufacture the presumption of usurpation from two other sources: her licensing of *other* photographs (not the Prince Photograph), and the inadmissible opinion of Jeffrey Sedlik. Neither can overcome her burden.

Goldsmith first looks to the licensing revenues derived from Warhol's works and her other photographs of Prince. (Goldsmith Opp. 27.) But they are not equivalent. AWF has licensed a work from the Prince Series twice in recent years, for $1,125 and $10,000. (AWF Br. 26.) Goldsmith has never licensed the Prince Photograph for publication, and her licenses of other photographs of Prince have earned an average of $645. (AWF Br. 15-16; AWF Reply 56.1 ¶¶178, 182-83.)

She next suggests that Warhol works and her photographs both appear in magazines and on the cover of music albums. (Goldsmith Opp. 28.) But this level of generality is insufficient to show specific market impact. Goldsmith supplies zero evidence that the two artists' works appeared in magazines of similar types, or in similar ways, or for a similar purpose, or that the same clients license Warhol's and Goldsmith's works for the same reasons. Again, the evidence is to the contrary. (AWF Br. 40-41; AWF Opp. 37-41.)

The inadmissible opinion of Jeffrey Sedlik cannot cure Goldsmith's deficiency of proof. (AWF Br. 43-44.) Contrary to Goldsmith's contention (Goldsmith Opp. 29), Sedlik's speculation that Goldsmith *intends* to monetize her Prince photographs in "all manner of derivative markets" (AWF R56.1 ¶232) is *not* supported by Goldsmith's fact testimony. (Ex. 12 (Goldsmith Dep.) 315-16 (testifying only that she would "edition" her works for sale, *i.e.*, in the primary market)). It is not a proper subject of expert opinion. *See Scott v. Chipotle*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016); AWF Br. 43-44. Likewise, Sedlik's opinion that photographers, in

general, "may create derivatives" "at any time" (Goldsmith Opp. 26) is no substitute for *proof* of Goldsmith's actual, specific market. And his conclusory opinion that the Prince Series usurped the Prince Photograph's potential licensing market is without foundation and should be excluded. (AWF Br. 43-44.) Despite his 25 years' experience (Goldsmith Opp. 29), he does not, as he "must[,] explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts," *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010) (quoting Fed. R. Evid. 702 advisory committee's note).

Finally, the transformative nature of the Prince Series mitigates any likelihood that the works would have a negative impact on Goldsmith's primary and derivative markets. *Cariou*, 714 F.3d at 709; *Author's Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014).

## CONCLUSION

AWF's motion for summary judgment should be granted in full.

Dated: New York, New York
        December 11, 2018

                                          Respectfully submitted,

                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                          By: */s/ Luke Nikas*
                                               Luke Nikas
                                               Maaren A. Shah
                                               Daniel Koffmann
                                               51 Madison Avenue, 22nd Floor
                                               New York, NY 10010
                                               Telephone:  (212) 849-7000
                                               Facsimile:  (212) 849-7100
                                               lukenikas@quinnemanuel.com
                                               maarenshah@quinnemanuel.com
                                               danielkoffmann@quinnemanuel.com

                                               *Attorneys for Plaintiff The Andy Warhol*
                                               *Foundation for the Visual Arts, Inc.*

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S INDIVIDUAL PRACTICES**

I certify that this brief complies with the Individual Practices of Judge John G. Koeltl and the Court's scheduling order (Dkt. 44). This brief contains a table of contents and a table of authorities. It is double-spaced (including footnotes); written in 12-point Times New Roman, a legible font; has reasonable (one inch) margins; and contains 2798 words (as counted by Microsoft Word 2013), excluding the parts of the brief exempted by Individual Practice Rule 2(D).

/s/ Luke Nikas .............................................................
Luke Nikas

*Attorney for Plaintiff The Andy Warhol Foundation for the Visual Arts, Inc.*